Curt H. Reisinger v. Commissioner. Walter Reisinger v. Commissioner.
Reisinger v. Commissioner
Docket Nos. 110135, 110136.
United States Tax Court
1943 Tax Ct. Memo LEXIS 291; 2 T.C.M. (CCH) 163; T.C.M. (RIA) 43246; May 24, 1943
*291 A lessor entered into a lease agreement whereby the lessee was to borrow money, erect an apartment building, and make amortization payments on the mortgage entered into by both parties to secure the loan. The lease was later assigned and the assignee took over all obligations under the lease including the payments on the mortgage. Held, lessor is not entitled to a depreciation allowance on the building as it does not suffer the loss by depreciation, having made no capital outlay. John B. Sullivan, Jr., Esq., 50 Federal St., Boston, Mass., for the petitioners. B. W. Berg, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The taxes in controversy are income taxes for the year 1939. Respondent determined a deficiency of $6,615.53 against petitioner, Curt H. Reisinger, who in this proceeding claims an overpayment of $845.47. A deficiency of $5,240.21 was determined against petitioner, Walter Reisinger, who claims he has overpaid his tax in the sum of $616.19. The sums claimed to be overpaid were in each instance paid within two years before the mailing of the respective deficiency notice. The issue involves the taxability of certain distributions received *292 by petitioners from the C. & W. Realty Corporation, sometimes herein called the C. & W. Corporation. The parties agree that if the C. & W. Corporation is entitled to depreciation on an apartment house erected under the terms of the lease in which the C. & W. Corporation was the lessor, then the latter had no earnings or profits out of which to pay dividends in 1939. The proceedings were consolidated for hearing and were submitted on the pleadings and an agreed statement of facts. We are setting forth such of the facts as in our opinion are necessary to an understanding of the point in issue. Findings of Fact The petitioner, Curt H. Reisinger, resided in New York City and maintained an office there during the tax year. He filed his return for the calendar year 1939 with the Collector for the second district of New York. The petitioner, Walter Reisinger, now resides at Palm Beach, Florida. He also filed his return for 1939 with the Collector for the second district of New York. Both returns were made on the cash basis. The C. & W. Realty Corporation was organized under New York law in 1920 for the purpose of holding, renting, managing, and improving real estate. This corporation *293 had an outstanding capital stock of $10,000, consisting of 100 shares of par value of $100 each. Petitioners each owned one-half of this capital stock. The stock was issued to them and they paid $1,000 in cash and conveyed to the corporation a residence at 993 Fifth Avenue and a garage on a neighboring street. On February 5, 1939, the C. & W. Corporation paid a cash dividend to its stockholders of $10,000. On October 25, 1939, the stockholders received a dividend of the stock of another corporation with a fair market value on that day of $15,015. Each of the petitioners received one-half of the cash dividend of $10,000 and one-half of the dividend in kind of $15,015, amounting to $12,507.50 each. The C. & W. Corporation had no earnings and profits for the year 1939 and on January 1, 1939, had no accumulated earnings or profits if the claimed depreciation is allowed. On March 14, 1929, the C. & W. Corporation entered into a lease with a New York corporation organized that year and called the 993 Fifth Avenue Corporation, Inc., sometimes herein called the 993 Corporation. The subject of the lease was the land and house of 993 Fifth Avenue owned by the C. & W. Corporation, said land *294 then having an assessed value of $495,000. This lease was for a term of 21 1/4 years from July 1, 1929 to September 30, 1950. The rent was to be as follows: 7/1/29 to 6/30/30
$37,500 per annum
7/1/30 to 6/30/31
27,500 per annum
7/1/31 to 9/30/31
10,000 per annum
10/1/31 to 9/30/36
40,000 per annum
10/1/36 to 9/30/43
43,000 per annum
Rest of term, 7 years
46,000 per annum The lease provided that the lessor, C. & W. Corporation, was to acquire the neighboring lease that property to the lessee. A mortgage of $175,000, due in July of 1930, burdened 993 Fifth Avenue. There was a mortgage of $130,000 on 992 Fifth Avenue, which was due in December of 1930. Among the provisions of the lease were the following: the lessee was to demolish all the buildings then on the land and build an apartment house, the plans of which were to be approved by the lessor. The lessee was to keep these buildings in "good order, condition and repair." There was to be no new building until the lessee had liquidated the mortgage due on the premises at 992 and 993 Fifth Avenue. Lessee was required to deliver to the lessor a bond of a surety company in an amount equal to the estimated cost of the new *295 building, guaranteeing completion; to adequately insure the premises and to pay all taxes assessments, water rent, and "other charges and impositions levied, assessed or imposed upon the Tenant, its successors and assigns, or upon the Landlord, its successors and assigns for or an account of the ownership of said premises and the buildings and improvements thereon * * *." The lessee could renew the lease for 21 years and then had the privilege of two further renewals of 21 years each, the net annual rental of the renewal term to be not less than $43,000 per year. The lessee was to secure a loan to finance the construction of the apartment building. The securing by the lessee of the loan is provided for in the lease as follows: In order that funds may be raised for the purpose of constructing the new building of at least twelve stories to be erected on said premises by the Tenant * * * the Landlord agrees that the Tenant may obtain a loan to be secured by a first mortgage on the fee of demised premises, with the building and improvements to be erected thereon * * *. The lessor permitted his fee to be mortgaged to secure the loan obtained by the lessee and agreed to execute, acknowledge, *296 and deliver a mortgage given to secure that loan. The lessor and lessee then were to join in the bond accompanying the mortgage. The lessee was to bear any expenses incident to the execution of these instruments. The proceeds of the bond and mortgage were to be advanced in such installments, at such time and in such amounts as agreed to by the lender and the lessee. The mortgage loan was to be used first to pay the existing mortgages on the demised premises, amounting to $305,000. The remainder of the loan was to be used by the lessee to build and equip a new apartment building. The lessee was to get all the proceeds of the loan. The lessee was not entitled to any credit on the rent or otherwise for interest on the amount used for the payment of the mortgages then existing. The lessee was obligated to pay the mortgage interest and to make amortization payments of two per cent a year in reduction of the principal amount. The pertinent section of the lease in this respect reads as follows: Tenant covenants to pay the mortgages from time to time all interest on the said mortgage or any extension or renewal thereof and each of the installments of the principal at the rate of not exceeding *297 the average of two (2) per cent per annum coming due thereunder and in case of any default on the part of the Tenant in paying the same, the Landlord may pay the same but shall not be obligated so to do * * *. The lease provided for the sum of $107,000 to be deposited by the lessee with the lessor as security for performance of the lease. The lessor could use this amount whenever the lessee defaulted in any of its obligations. The lessee was to receive no interest on the $107,000 security and the lessor had permission to use that amount to purchase the property at 992 Fifth Avenue. Lessee waived any right to have that amount remain intact during the term of the lease. The $107,000 was not used to purchase the property at 992 Fifth Avenue, however, but was finally liquidated, pursuant to an agreement, whereby $102,701.34 was applied to the operating costs sustained by Metropolitan Apartments, Inc., a successor lessee, while it was in possession. The balance of $4,298.66 was paid to the Reisinger Realty Corporation, sometimes herein called Reisinger Corporation or Reisinger, the present lessee, as its absolute property, as "income." The C. & W. Corporation acquired title to the adjoining *298 land and house at 992 Fifth Avenue shortly before July 1, 1929. The cost of this land and its building was $237,462.25. On July 1, 1929, the C. & W. Corporation gave possession of both 992 and 993 Fifth Avenue to the 993 Corporation in accordance with the terms of the lease. The 993 Corporation demolished the buildings then standing on those lots and immediately began the construction of the apartment house. On March 1, 1930, a mortgage, in accordance with the terms of the lease, was placed on the land and the building then in the course of erection. The C. & W. Corporation and the 993 Corporation were the mortgagors and the mortgagee was the Metropolitan Life Insurance Company. The mortgage loan amounted to $1,000,000 repayable in semiannual installments of $10,000 each, beginning September 1, 1932, and with the entire unpaid balance due and payable March 1, 1945. The money received on the mortgage loan of $1,000,000 was used first to pay off the mortgages on the leased premises existing on March 1, 1930, amounting to $305,000. The balance of $695,000 of the said loan was used and applied solely to the construction of the apartment building on the lots at 992 and 993 Fifth Avenue. *299 This sum was disbursed by the mortgagee directly to the building contractors with the approval of the mortgagors. The building was completed on July 1, 1930. Its total cost was $873,000. The cost in excess of $695,000 was paid by the 993 Corporation and by the surety company upon the default of the 993 Corporation of its obligation to complete the building. Thereafter, on April 2, 1931, the 993 Corporation assigned the lease to a subsidiary of the surety company, viz., Metropolitan Apartments, Inc. The 993 Corporation was dissolved by proclamation of the Secretary of State of New York on December 15, 1937. On August 17, 1932, the Metropolitan Apartments, Inc. assigned the lease to the Reisinger Realty Corporation, a New York corporation organized by the petitioners for the sole purpose of operating the apartment in question. The capital stock of the Reisinger Corporation consisted of 200 no-par value shares for which $200 was paid into the corporation by the petitioners. Petitioners owned the 200 shares equally. The Reisinger Corporation assumed the payment of all rents reserved by the lease as well as the performance of all covenants contained therein. On that same day of August *300 17, 1932, the C. & W. Corporation, Reisinger Corporation, the Metropolitan Apartments, Inc. entered into an agreement. Under the terms of this agreement Reisinger was to pay the Metropolitan Apartments, Inc., 50% of the earnings from the leasehold until $100,000 had been paid. The obligation was solely that of the Reisinger Corporation. The lease of March 14, 1929 was thereby modified so as to reserve in lieu of and in substitution for the annual rental therein provided for, an annual rental of $20,000 per year, payable in advance on the first day of every month, until such time as the $100,000 had been paid to Metropolitan Apartments, Inc. by the Reisinger Corporation. Also on August 17, 1932, an escrow agreement between the petitioners, as stockholders of the Reisinger Corporation, the Metropolitan Apartments, Inc., and the Reisinger Corporation was entered into, whereby the petitioners deposited in escrow 98 shares of the common stock of Reisinger as security for the latter's performance of its obligations as set forth in the preceding paragraphs. The Reisinger Corporation, as lessee, made payments on the mortgage held by the Metropolitan Life Insurance Company, such payments *301 totaling $90,466.99. These payments were made from December 31, 1932 to December 31, 1939, inclusive. The balance remained unpaid. The useful life of the apartment building constructed on 992 and 993 Fifth Avenue is 33 1/3 years from the date of its completion. Opinion ARUNDELL, Judge: The parties are in agreement that the respondent properly taxed to petitioners the distributions received by them from the C. & W. Realty Corporation in the taxable year, unless the latter was entitled to deduct depreciation on the apartment building erected on the leased premises. If the C. & W. Corporation was entitled to deduct depreciation on a cost basis of $695,000, the parties have agreed such a deduction would leave that company with no earnings and the determination cannot be sustained. The immediate question then is the right of the C. & W. Corporation, as the lessor, to take depreciation under the circumstances here present. The applicable legal principles are reasonably well settled. In general, for a lessor to obtain the desired deduction it must appear that it is his investment that will suffer and that the property being exhausted is one in which the cost is his and not that of another. *302 ; . The solution of the question depends upon the proper construction of the provisions of the lease agreement, the most important of which we have summarized in our findings. The C. & W. Corporation owned the land; the 993 Fifth Avenue Corportion desired to erect an apartment house on it. The lease agreement provided in the most elaborate way the terms under which the program was to be carried out. In specific terms the agreement provides that the lessee at its own expense shall demolish "the present buildings on the leased premises" and "in place thereof shall complete, equip and fully furnish * * * an apartment house building * * *." The money to construct the buildings was to be borrowed by the lessee and during the term of the lease the lessee, at its own cost and expense, "shall at all times keep in good order and repair, inside and out, all buildings and structures hereafter constructed on or appurtenant to such premises * * *." The lessor is to receive the ground rent; the rentals from the apartment building are to belong *303 to the lessee who in turn must bear the expenses of operating the property, including the payment of the property taxes. Particular emphasis is laid by petitioners' counsel on the manner of raising the money to pay the cost of constructing the apartment building. The lessee apparently did not have cash in hand to pay the cost. A loan was negotiated from the Metropolitan Life Insurance Company secured by a first mortgage on the leased premises, including the apartment house being erected thereon. The C. & W. Corporation, as the lessor and owner of the fee, joined, as well it must with the lessee in executing the mortgage. But it was provided that the lessee should pay the interest on the loan and it was the lessee who was required to curtail the mortgage at the rate of two per cent per annum. There can be no doubt that the loan was essentially to the lessee and in fact it was provided that so much of the loan as might not be needed for the construction of the apartment building was to belong to the lessee personally. We think these facts demonstrate that in every way the investment was that of the lessee, the 993 Fifth Avenue Corporation. The fact that the original lessee was compelled *304 to assign the lease to Metropolitan Apartments, Inc., who in turn assigned its interest in the lease to the Reisinger Realty Corporation, is immaterial. Each successor lessee assumed the obligations of 993 Fifth Avenue Corporation and took the lease subject to the mortgage. In these circumstances we do not believe it can be said that the C. & W. Corporation has a depreciable interest in the apartment building based on a cost to it of $695,000. It is now clear that a lessor does not realize income when a building is erected on his land by a lessee, , but income is realized by the lessor when the lease is terminated and the improvements are surrendered to the lessor. . This rule is modified by the Revenue Act of 1942, section 115 (a), which provides for the exclusion from the lessor's income upon termination of a lease of the value of improvements erected by the lessee. Subsection (b) prescribes that the adjusted basis shall not be increased on account of income so excluded from the lessor's gross income. Inasmuch as the adjusted basis is the starting *305 point in computing depreciation, no depreciable interest would be acquired if the value of the building upon its surrender, were excluded from gross income. It thus appears that the lessor realizes no income until he comes into control and possession of the improvements and it is not until then that it may be said that he has an investment in the property that would entitle him to the depreciation allowance. The Commissioner's determination is sustained. Decision will be entered under Rule 50.